## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**DERON MCCOY, JR.,**

      **Plaintiff,**

      **v.**

**ARAMARK CORRECTIONAL SERVICES, LLC, et al.,**

      **Defendants.**

**Case No. 5:16-CV-03027-HLT**

## ORDER

Plaintiff inmate DeRon McCoy, Jr. filed this lawsuit against Aramark Correctional Services ("Aramark") and multiple Aramark and Kansas Department of Corrections ("KDOC") personnel alleging First Amendment free exercise violations under 42 U.S.C. § 1983 and violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.* Doc. 56. The crux of his complaint is that Defendants have failed to provide him with a Kosher diet in accordance with his Jewish faith.[1]

This case was recently transferred to the undersigned judge. Upon transfer, the Court undertook a comprehensive review of the record and previous orders. To put it mildly, for a case that has yet to engage in discovery, the record is lengthy and muddled. The Court struggled with determining which claims remain for resolution. Unfortunately, some of the language used in prior rulings is somewhat imprecise, which is certainly understandable given the nature of Plaintiff's claims and filings. This Court is uncertain it has cleared up any ambiguities here, but it has endeavored to do so. After the rulings issued in this order, the following claims will remain for

---

[1]    The Court recognizes that Plaintiff is proceeding pro se and therefore "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007).

disposition: (1) official capacity claims for prospective relief against Defendant Berry under § 1983 and RLUIPA based on the Certified Religious Diet ("CRD") policy;[2] (2) claims against Defendants Aramark, Paul Church (official capacity), and Julie Dockendorff (official capacity) (who did not move for summary judgment) under § 1983 and RLUIPA based on the CRD policy and meal preparation at three prison facilities; and (3) claims against Defendants Church (individual capacity) and Dockendorff (individual capacity) under § 1983 based on the CRD policy and on CRD meal preparation at the same three facilities.

Turning now to the issues presently before the Court, Defendants Patricia Berry and Cheryl Allen (collectively "Defendants") each move for summary judgment (Docs. 127 and 132), and Plaintiff cross-moves for summary judgment against Defendant Berry (Doc. 149).[3] As discussed below, the Court finds that it lacks jurisdiction over some of Plaintiff's claims because they are moot. Other claims against Defendants Berry and Allen are either unexhausted, barred by qualified immunity, or unsupported. Accordingly, the Court grants Defendants' motions for summary judgment and denies Plaintiff's motion. Notably, however, the grant of Defendant Berry's motion does not result in her dismissal from the case because she did not move for summary judgment on two claims against her.

---

[2]   For ease of reference, the Court uses the terminology "CRD policy" throughout this order. This is a bit of a misnomer. In using this descriptor, the Court uses it in its general sense and refers to the official CRD menu itself, as well as KDOC standards for CRD food preparation. These menus and standards (for 2018) are attached as exhibits 5 and 6 to Doc. 133-1.

[3]   Plaintiff previously filed his response to Defendant Berry's motion and his memorandum in support of summary judgment as a combined filing. Judge Murguia construed the record to fix multiple scheduling difficulties that resulted. *See* Doc. 163 at 7 (treating Plaintiff's memorandum as both a response and timely-filed motion).

## I.      BACKGROUND[4]

KDOC contracts with Aramark for meal services at various sites, including Lansing Correctional Facility ("LCF"), El Dorado Correctional Facility ("EDCF"), and Hutchinson Correctional Facility ("HCF"). Doc. 41 at 2. Defendant Berry is the Contract Manager for KDOC, including for the Aramark contract. Doc. 133-1 at 1. Defendant Allen is a dietitian formerly under contract with KDOC. Doc. 129-1 at 1. Plaintiff has been in the custody of the Kansas Secretary of Corrections since 2012. He is presently incarcerated at EDCF. In 2014, while incarcerated at LCF, Plaintiff changed his religious preference to a sect of the Jewish faith and was placed on the facility's roster to receive a CRD. *Id.* He is dissatisfied with the CRD at all three KDOC facilities and believes that the diet does not provide Kosher food in conformity with his religious beliefs.

### A.      The CRD

The agreement between KDOC and Aramark grants Aramark the exclusive right to perform all food service, including non-inmate labor, at KDOC facilities. Aramark's obligations include the provision of various special diets other than the common fare, including medical diets and the CRD. Doc. 133-1 at 11. Aramark is responsible for obtaining review of the CRD by an appropriate religious advisor to ensure that the CRD meets the requirements of a certified religious diet. *Id.* The policies governing the CRD program include two KDOC Internal Management Policy and Procedure ("IMPP") documents included in the Martinez Report: IMPP 10-106, "PROGRAMS & SERVICES: Standardized Menu, Ensuring Nutritional Adequacy of Diets, and Meal Service Schedules" (Doc. 41-4), and IMPP 10-119, "PROGRAMS AND SERVICES: Medical and Religious Diets and Vegetarian Alternative Diet" (Doc. 41-5). These materials explain some of the procedures followed to establish and implement meals in KDOC facilities.

---

[4]    The following facts are either uncontroverted or viewed in the light most favorable to Plaintiff.

In large part, Plaintiff's claims rely on two facts: (1) IMPP 10-106 makes repeated references to "[KDOC's] contract monitor" working together with "[KDOC's] contracted registered dietician" to approve menus and ensure nutritional adequacy and variety, and (2) past versions of the CRD menu bear Defendants' signatures. Doc. 41-4 at 2-4; *see* Doc. 41-3 at 3-7 (past menus). During Defendant Allen's tenure, each CRD menu was signed by two dietitians, one for KDOC (formerly Defendant Allen) and one for Aramark; the state contract monitor (Defendant Berry); and Aramark's religious authority (previously, Rabbi M. Fellig).[5] *See* Doc. 41-3 at 3-7. As of 2018, the menus are signed only by Aramark's dietitian and religious authority. *Compare id. with* Doc. 133-1 at 45-47.

Aramark's meal preparation procedures require that Kosher products contain a certifying symbol and be stored separately from common fare. Doc. 133-1 at 48. The procedures also provide for a Kosher preparation area, separate utensils and cookware, and for separate cleaning areas. *Id.* at 49-50.

Rabbi Ben Friedman, a rabbinical authority, provides consultation to KDOC about Jewish religious issues, including Kosher dietary requirements. Doc. 133-3 at 1. His work with KDOC includes ongoing compliance review and monitoring of Aramark's administration of the CRD. *Id.* This may include monitoring kitchen operations; reviewing policies, procedures, and food labels; and providing advice to KDOC and Aramark on how to comply with Jewish dietary law. *Id.* Rabbi Friedman attests that he has reviewed "the procedures, menus, and food labels for all items on the CRD," and that "[i]t is completely permissible for inmates wishing to observe Jewish dietary laws

---

[5]    On March 16, 2018, on motion, the Court dismissed Rabbi Fellig from this case for insufficient service. Doc. 90 at 6.

to eat all of the items on the CRD menu, including inmates wishing to meet strict Kosher laws under Orthodox Judaism." *Id.* at 2.

He states it is not necessary for food to bear Kosher symbols in order to be Kosher. *Id.* at 3. He has reviewed the certificates of all items used in the CRD, and states that "[a]ll of the items on the CRD menu are Kosher." *Id.* at 2.[6] With respect to Plaintiff's primary concerns, Rabbi Friedman explains that many of the CRD items are shipped in bulk, and although they do not maintain Kosher markings on the individual packaging, they either bear Kosher markings "on the shipping box [or] . . . on the certificates maintained by Aramark." *Id*. at 3. He also states that HCF, LCF, and EDCF maintain separate storage areas for CRD menu items, though "[i]t is not a violation of Kosher dietary laws to store CRD menu items in the same room or cooler as non-CRD items." *Id.* at 2.

Finally, Rabbi Friedman attests that it is not a violation of Kosher dietary laws to prepare the CRD outside of the CRD room or for the respective appliances to be near each other. *Id.* at 4. He notes that EDCF uses the same sink to wash cooking utensils but explains that the washing is Kosher because the sink is sanitized and plastic tubs are used to separately wash Kosher utensils. *Id.* He further states it is not a violation for CRD-designated trays to be placed in the common tray slot after use or to use common trash bins because the CRD-designated trays are then stacked separately, placed in rubber tubs, or are rinsed eliminating any cross-contamination issues. *Id.* at 5.

---

[6]  Exhibit 1 to Rabbi Friedman's Declaration is an exhaustive collection of certificates verifying that various CRD menu items are Kosher.

**B.     Plaintiff's Grievance and Allegations**

Plaintiff began the grievance process in 2014, while incarcerated at LCF. Doc. 41-7 at 6. He stated that CRD meal preparation at LCF resulted in the food, utensils, and dishes being contaminated by non-Kosher contact, and requested the remedy of packaged Kosher meals. His request and appeal were denied, and he commenced this suit. Although his allegations regarding the Kosher status of the CRD have remained consistent, his concerns regarding each facility's meal preparation vary in both their nature and support.

Plaintiff relies on his own investigations and firsthand knowledge, statements of other inmates, and photos from various facility kitchens. First, from personal experience, Plaintiff states that he has not observed Kosher markings on any food items other than condiments while in KDOC custody. Second, from fellow inmates, Plaintiff provides an affidavit by a former cook at HCF, who states that he similarly has not observed Kosher markings on the packaging for entrees, bread, and other food items while working in the kitchens as a CRD cook. Doc. 71-1 at 2-4. Finally, Plaintiff provides photos of the kitchens, a copy of the Kosher certification for the white bread, and a photo of the bread box. There does not appear to be Kosher marking on the box, and the certificate indicates that the bread is only Kosher when marked as such. Doc. 149-1 at 32-35.

**C.     The Lawsuit**

Plaintiff filed suit while incarcerated at LCF. He was later transferred to EDCF, then HCF, and then EDCF again. He filed his third amended complaint while at HCF. As stated above, Plaintiff's third amended complaint asserts § 1983 and RLUIPA claims against Defendants both in their official and individual capacities. Doc. 56. He alleges that Defendants created and enforced the policy and procedure by which the CRD meals are prepared and food is handled in the facilities where Plaintiff has been housed. *Id.* Plaintiff seeks $200 in damages, $77,000 in punitive damages,

costs of this suit, a declaratory judgment that Defendants are violating his rights, and a permanent injunction directing Defendants to provide Kosher meals conforming with Jewish dietary laws. *Id.* at 15. Plaintiff wants his meals served still sealed (like "TV dinners"), pre-packaged, and visibly marked Kosher. Alternatively, the Kosher meals should be prepared in a separate room and any utensils or tools used to prepare them must be kept and cleaned separately.

Judge Murguia dismissed Plaintiff's RLUIPA claims against Defendants in their individual capacities because RLUIPA does not create a cause of action for individual-capacity claims. Doc. 90 at 13. Judge Murguia found that, to the extent Plaintiff seeks money damages or a declaration that Defendant Berry violated his rights in the past (in her official capacity), relief is barred by the Eleventh Amendment. *Id.* at 8. And Judge Murguia dismissed Plaintiff's claims for failure to supervise subordinates—except to the extent that Plaintiff claims that Defendants intentionally created, promulgated, implemented, or were otherwise responsible for the CRD menu. *Id.* at 10.

Accordingly, the claims presently before the Court are: (1) official capacity claims for prospective relief against Defendants Berry and Allen[7] under § 1983 and RLUIPA based on KDOC CRD policy;[8] (2) official capacity claims for prospective relief against Defendants Berry and Allen under § 1983 and RLUIPA based on the execution of the CRD (meal preparation) at LCF, HCF, and EDCF; and (3) individual capacity claims for damages against Defendants Berry and Allen

---

[7]    To the extent that any claims for retrospective equitable relief remain against Defendant Allen, the Court does not address them separately here. Cumulatively, the analysis throughout this order also operates to dismiss any such claims that remain.

[8]    Defendant Berry filed her motion in reliance on a contrary representation in one of Judge Murguia's orders. The order stated that the § 1983 claim against Defendant Berry "in her official capacity and for any retroactive relief" was dismissed. Doc. 90 at 20. It also purported to grant dismissal "regarding plaintiff's RLUIPA claims." *Id.* But these holdings are inconsistent with legal principles cited within the order. Elsewhere, Judge Murguia suggested that the official capacity claims were only dismissed "to the extent that plaintiff seeks money damages or a declaration from the court that defendant Berry violated his rights in the past." *Id.* at 8. This statement is consistent with Eleventh Amendment law. *See, e.g.*, *Tarrant v. Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 910-11 (10th Cir. 2008). Complete dismissal of the claims—including the request for prospective relief—is not. To the extent that Judge Murguia intended full dismissal of official capacity claims under § 1983 and RLUIPA, this Court respectfully disagrees and reinstates the claims.

under § 1983 based on the CRD (both its overall policy as well as the specific execution at LCF, HCF, and EDCF). Defendants Berry and Allen now move for summary judgment on most of these claims. Docs. 127 and 132.

## II.   STANDARD

Summary judgment is appropriate where the moving party demonstrates that "there is no genuine dispute as to any material fact" and it is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In applying this standard, courts must view the facts and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.   ANALYSIS

As discussed above, Defendants seek summary judgment on most of the remaining claims asserted against them. Docs. 127 and 132. The Court determines that:

- The Court lacks jurisdiction over the official capacity/prospective relief claims for CRD meal preparation at LCF and HCF because they are moot;

- The Court also lacks jurisdiction over all Plaintiff's official capacity claims against Defendant Allen for prospective relief because Defendant Allen is no longer employed by KDOC;

- All claims for meal preparation at EDCF and HCF are unexhausted;

- Plaintiff's § 1983 and RLUIPA official capacity claims for prospective relief against Defendant Berry based on the CRD policy remain pending;

- Defendant Berry has qualified immunity for Plaintiff's individual capacity claim for damages against her under § 1983; and

- Plaintiff fails to demonstrate a material issue of fact with respect to his § 1983 claim for damages against Defendant Allen.

## A.     Standing and Mootness

The first issue the Court addresses is Plaintiff's standing to bring several of his claims. Both Defendant Berry and Defendant Allen previously raised standing in other motions. Docs. 100 at 8-13; 104 at 1-2 (incorporating all arguments from Defendant Berry's motion); 116 at 7-9. Judge Murguia summarized their arguments as ones of mootness and found that they did not justify dismissal of claims. Doc. 123 at 4-7. After further review, the Court believes that Defendant Berry has justifiably once again questioned this Court's jurisdiction over certain claims.[9]

Article III of the Constitution specifically limits the jurisdiction of federal courts to cases and controversies. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The case or controversy limitation requires that a plaintiff have standing." *Colo. Supreme Court*, 87 F.3d at 1164; *see also Brady Campaign to Prevent Gun Violence v. Brownback*, 110 F. Supp. 3d 1086, 1091 (D. Kan. 2015) ("One of several doctrines reflecting Article III's case-or-controversy limitation on the judicial power is the doctrine of standing."). But standing is determined "as of the commencement of suit . . . ." *Lujan*, 504 U.S. at 570 n.5; *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154-55 (10th Cir. 2005). This is not to say that the case-or-controversy requirement ends after commencement; a plaintiff must establish that he has suffered an injury-in-fact throughout

---

[9]     Defendant Allen did not raise standing or mootness in her initial briefing this time. *See* Doc. 128. But raising either was not necessary, as they are jurisdictional issues and the Court has a duty to raise them on its own. *United States v. Colo. Supreme Court*, 87 F.3d 1161, 1166 (10th Cir. 1996) ("[A] court must raise the standing issue sua sponte, if necessary, in order to determine if it has jurisdiction."); *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996) ("Because mootness is a matter of jurisdiction, a court may raise the issue sua sponte."). In any event, Defendant Allen did incorporate Defendant Berry's arguments through her reply brief. Doc. 172 at 1-2. Although courts do not usually consider arguments raised for the first time in a reply brief, here Plaintiff filed a sur-reply (without leave to do so) and has had a full opportunity to respond to all standing and mootness arguments. The Court therefore considers both standing and mootness with respect to both Defendant Berry and Defendant Allen.

the litigation. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (citations omitted). If subsequent events impact whether an actual controversy remains, courts evaluate their continuing jurisdiction under mootness principles. *Prior v. Steed*, 456 F.3d 1209, 1212 (10th Cir. 2006). Either way, the question is one of a court's jurisdiction.

In this case, Plaintiff filed his original complaint on January 26, 2016. At that time, Plaintiff was housed at LCF, had applied to receive the CRD at LCF, and brought claims about the CRD at LCF. Doc. 1. At commencement, Plaintiff had standing to bring his claims.

The current operative complaint, however, is Plaintiff's third amended complaint. Doc. 56. Plaintiff filed this complaint on June 14, 2017. Before filing, Plaintiff had been moved to EDCF and to HCF (but not yet back to his current location, EDCF). He was at HCF when he filed the third amended complaint and alleged constitutional and RLUIPA violations at all three facilities. The question, then, becomes one of mootness: Did Plaintiff's transfers and his actions or inaction after those transfers remove the actual controversy before the Court?[10] For some of Plaintiff's claims, the answer is yes.

In examining whether a case or controversy exists, the Court turns to the following uncontroverted facts:

- Plaintiff was housed at LCF when he filed this lawsuit and remained there until his transfer to EDCF on June 16, 2016. While at LCF, Plaintiff applied for and was approved to receive CRD meals.

---

[10]   It is at least arguable that the Court should consider Plaintiff's standing to bring new claims in the third amended complaint instead of the original complaint—particularly when one of the questions is whether Plaintiff has suffered injury-in-fact from a <u>new</u> claim, not whether he <u>continues</u> to suffer injury-in-fact from an <u>old</u> claim. *Compare Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 n.3 (Fed. Cir. 2005) ("The initial standing of the original plaintiff is assessed at the time of the original complaint, even if the complaint is later amended."), *with In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) ("[I]n cases where a plaintiff has filed an amended complaint, federal courts must resolve questions of subject matter jurisdiction by examining the face of the amended complaint."). Indeed, "standing" is largely how Defendant Berry framed her arguments. Docs. 133 at 16-19; 171 at 28-29. While this dichotomy raises an interesting question, ultimately, the central question is whether this Court has jurisdiction over Plaintiff's claims. The Court believes it can answer that question without expounding at length on whether standing or mootness is the appropriate doctrine to apply here.

- Plaintiff was housed at EDCF from June 16, 2016 until his transfer to HCF on March 22, 2017. Plaintiff has not pointed to any evidence in the record indicating that he requested to receive the CRD during this time at EDCF or that Plaintiff ate CRD meals during this time.

- Plaintiff was housed at HCF from March 22, 2017 to January 29, 2018. While at HCF, Plaintiff applied for a religious diet. His request was initially granted, but then denied. Plaintiff was not eligible to receive the CRD while at HCF because he was on a medical diet. Plaintiff does not allege that he consumed any CRD meals while at HCF.

- Plaintiff is currently housed at EDCF and has been since January 29, 2018. Defendant Berry attached evidence indicating that, at the time she filed her motion for summary judgment, Plaintiff had not requested to be on the religious diet at EDCF. But Plaintiff attached to a sur-reply (Doc. 173) a document showing that he was, indeed, approved for the CRD at EDCF on April 11, 2019—after Defendant Berry filed her motion, but before she filed her reply brief on October 14, 2019.

- Requests for religious diets are handled on a facility-by-facility basis.[11] IMPP 10-110D, Section V.B.2. provides, "Even if the particular request for accommodation has been previously approved within KDOC, the request for accommodation shall be forwarded to the Religious Programs Coordinator for review, who shall, at a minimum, confirm that the particular request has been previously accommodated at another facility within KDOC, an in what manner and under what circumstances." Doc. 56 at 50.

### 1. Defendants' Argument that the Court Lacks Jurisdiction Over All Claims for Prospective Relief because Plaintiff is No Longer under the CRD

At first glance, Defendant's jurisdictional argument that would address all claims for prospective relief looked promising. Based on past filings in the case, Defendant Berry's motion and reply brief, and Plaintiff's response, it appeared that Plaintiff was no longer requesting or receiving meals under the CRD. This would mean there was no case or controversy for the Court to decide—at least as to any requests for prospective relief.

But on November 6, 2019, Plaintiff filed a document that he titled both a reply to his own summary judgment motion and a sur-reply to Defendants' motions. Doc. 173. Attached to that

---

[11] Plaintiff attempted to controvert this fact by stating, without support, that "Once on CRD one remains on CRD until review." Doc. 146 at 7. This statement is contrary to IMPP 10-110D, § V.B.2.

document is an approval of Plaintiff's request to be placed on the CRD at EDCF, dated April 11, 2019. The Court has no reason to question the authenticity of this document. On the other hand, the Court <u>does</u> question why Defendants continued to argue that Plaintiff was not under the CRD after April 2019 and why they did not ask to address the significance of this document after Plaintiff filed it. This oversight or omission was unhelpful to the Court. A one-page document filed by Defendants could have clarified the record and the relevant arguments for the Court to consider.

In any event, because Plaintiff <u>is</u> under the CRD at EDCF, Defendants' argument that the Court lacks jurisdiction over all claims for prospective relief fails.

### 2. Official Capacity/Prospective Relief Claims for Meal Preparation at LCF and HCF (Against Both Defendants Berry and Allen)

The Court next turns to Plaintiff's claims for prospective relief about the CRD meal preparation at LCF and HCF. Because Plaintiff is no longer housed at either facility, these claims are moot. Previously, Judge Murguia declined to find Plaintiff's challenges to the CRD menu and official meal-preparation procedures moot because, regardless of Plaintiff's many facility transfers, he claimed that he remained subject to statewide policies. Doc. 123 at 5-6. But now the Court has evidence that religious diets are handled on a facility-by-facility basis. And Plaintiff continues to argue claims based on individual meal service and kitchen conditions at each facility.

Plaintiff argues that the kitchen conditions and meal service in LCF and HCF result in CRD ingredients, pans, and utensils having non-Kosher contact, and that this prevents the meal from being Kosher. Because Plaintiff is currently incarcerated at EDCF, he is not subject to these conditions, and his injunctive and declaratory claims relating to meal preparation and service at prior facilities are moot.[12] *See Jordan v. Sosa*, 654 F.3d 1012, 1027 (10th Cir. 2011) ("Where the

---

[12]   Plaintiff suggests that his claims are not moot because he may be transferred back to one of his prior facilities at any time. Doc. 146 at 21. Essentially, he makes a "capable-of-repetition-but-evading-review" argument. The Court rejects Plaintiff's position as speculative. *See Nasious v. Ray*, 3 F. App'x 745, 747 (10th Cir. 2001) (finding

prisoner's claims for declaratory or injunctive relief relate solely to the conditions of confinement at the penal institution at which the prisoner is no longer incarcerated, courts have concluded that they are unable to provide the prisoner with effective relief."). Plaintiff's current location, however, does not moot his claims for _damages_ while at LCF. These claims are limited to the § 1983 individual capacity claims against both Defendant Berry and Defendant Allen. *See Sossamon v. Texas*, 563 U.S. 277, 293 (2011) (holding that only official capacity claims for equitable relief are available under RLUIPA); *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) (holding that only injunctive relief is available from official-capacity defendants under § 1983). The claims for damages (as well as prospective relief) at HCF and EDCF suffer from another problem: Plaintiff failed to exhaust, as explained later.

### 3.  All of Plaintiff's Claims for Prospective Relief against Defendant Allen

Even if some of the prospective relief claims were not moot for other reasons, they are still moot against Defendant Allen because she can no longer offer any relief. Defendant Allen states that she is no longer the contract dietitian for KDOC, and "[a]s of July 2018 [has] no relationship with [KDOC] nor any ability to affect any policy, practice, or procedure of [KDOC]." Doc. 129-1 at 1. Because Defendant Allen is not able to provide prospective relief, Plaintiff's § 1983 and RLUIPA claims against her in her official capacity are moot. *See Sossamon*, 563 U.S. at 293; *Brown*, 662 F.3d at 1161 n.5. Therefore, Plaintiff is limited to damages from Defendant Allen in her individual capacity under § 1983—claims that are addressed later in this order.

---

that transfer to a different facility mooted the plaintiff's claims for prospective relief when he alleged no facts suggesting he would be returned to the original facility).

### B.     Exhaustion of Administrative Remedies

The Prison Reform Litigation Reform Act ("PLRA") prohibits prisoners from bringing a suit regarding prison conditions until administrative remedies are exhausted. 42 U.S.C. § 1997e(a). In a functioning grievance process, there is no exception for alleged futility. *See Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).[13]

The documentation for Plaintiff's grievance process in this case can be found in the Martinez report. *See* Doc. 41-7. When read liberally, as required, Plaintiff's administrative claim concerns the meal service at LCF and includes the Kosher status of CRD meal items. *See id.* at 3-4. Plaintiff has not pursued the grievance process at HCF or EDCF, explaining "it would have been futile . . . because the same CRD [is used] at every facility." Doc. 173 at 2. To the extent Plaintiff bases his claims on the method of meal service at HCF and EDCF, rather than KDOC policies relevant to the CRD, he must first give KDOC the opportunity to address his new grievances. *See* Doc. 149 at 15-16 (discussing EDCF's mixing of Kosher and non-Kosher trays).

Plaintiff's claims regarding the meal service and kitchen conditions at HCF and EDCF are unexhausted, and the Court dismisses them without prejudice.[14] *See Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) (noting that dismissal of claims based on failure to exhaust should normally be without prejudice).

### C.     Section 1983 Individual Capacity Claims Against Defendant Berry

Defendant Berry, as a state employee, has qualified immunity from monetary damages in her individual capacity.[15] Qualified immunity applies when a government official's conduct does

---

[13]   Although the Supreme Court has identified rare exceptions to statutory exhaustion, none apply here. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016).

[14]   Of course, the Court has already dismissed some of these claims based on mootness, but failure to exhaust serves as an alternative basis for dismissal.

[15]   Because qualified immunity can also extend to private individuals acting pursuant to contractual duties and performing government functions, Defendant Allen may be entitled to immunity despite her employment status

not violate clearly established constitutional or statutory rights of which a reasonable official would have known and "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011); *see Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011).

Once raised, the plaintiff has the burden to show that (1) the defendant's actions violate a constitutional right and (2) the constitutional issue was clearly established at the time of the defendant's actions. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). Plaintiff's burden on this analysis is heavy. *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018). Courts have discretion to decide which prong of the qualified-immunity inquiry to address first. In cases that are "so fact-bound that deciding the constitutional question offers 'little guidance for further cases'" or in "cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right," focusing on the clearly established prong "may avoid the risk of deciding a case incorrectly given insufficient briefing on the constitutional violation question" and preserve judicial resources. *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236-40 (2009)).

To be clearly established, the contours of the right must be sufficiently clear so that a reasonable official would know that what he was doing violated the right. *Medina*, 252 F.3d at 1128; *Knopf*, 884 F.3d at 944. It is not enough to assert a right at a high level of generality (e.g. a free-speech right or a due-process right)—the question is whether the specific conduct of the defendant is clearly prohibited. *See al-Kidd*, 563 U.S. at 742. Courts must analyze the question in

---

as a contractor. *DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714, 722 (10th Cir. 1988); *see Filarsky v. Delia*, 566 U.S. 377, 389 (2012) ("[I]mmunity under § 1983 should not vary depending on whether an individual working for the government does so as a full-time employee, or on some other basis."). Because Defendant Allen is entitled to summary judgment in any event, the Court does not resolve whether her work as a contract dietitian brings her within the necessary historical coverage of immunity.

"the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). "A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation." *Knopf*, 884 F.3d at 944 (quoting *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017)). Although there need not be a case directly on point, judicial precedent must have "placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741-42 (noting that, in the absence of controlling authority, it is necessary to at least have "a robust 'consensus of cases of persuasive authority'" (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999))).

Because Plaintiff's authority does not clear this bar, Defendant Berry is entitled to qualified immunity. In the Tenth Circuit, an inmate's First Amendment right to receive meals in conformity with his sincerely held religious beliefs has been clearly established since at least 2002. *See Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002). But Defendant Berry does not challenge Plaintiff's right to receive Kosher meals. She instead contends that, on the existing record, the law is not so clear as to put a reasonable official on notice of a potential violation in this case. The facts of *Beerheide* and other extant law illustrate this lack of clarity.

The practice at-issue in *Beerheide* was the failure to provide free Kosher meals to inmates of Jewish faith, having the practical effect of denying them a Kosher diet. *Id.* at 1184, 1187-89. The department of corrections's proposal that inmates could obtain pork-free or vegetarian meals through the common fare program was inadequate because:

> [t]estimony showed kosher laws do not deal simply with whether a food item does or does not contain pork or other non-kosher animal products. Kosher laws govern not only the ingredients (both animal and vegetable), but the source, storage, and preparation of those ingredients, and the service of meals. A vegetarian meal prepared in a non-kosher kitchen is not kosher.

*Id.* at 1187 (citing *Ashelman v. Wawrzaszek*, 111 F.3d 674, 675 n.2 (9th Cir. 1997)). Thus, on the facts, *Beerheide* faced the clear denial of an inmate's general right to a diet in conformity with his sincerely held religious beliefs. Plaintiff's other authority is similarly inapposite here. The challenged policy in *Ashelman* provided Jewish inmates with one Kosher meal per day and two potentially non-Kosher "vegetarian or pork-free meals." *Id.* at 676. Although a slight improvement over *Beerheide*'s complete refusal, the remaining two thirds of the inmates' diet would still be plainly inconsistent with their First Amendment rights.

Other cases from the Tenth Circuit provide little assistance to Plaintiff. *Abdulhaseeb v. Calbone* presents another clear denial of an inmate's religious meal right where the record showed that a Muslim inmate lacked meaningful access to either a halal or Kosher diet. 600 F.3d 1301, 1317-18 (10th Cir. 2010). The court noted that the indigent inmate could not purchase his own meals; facility policy did not permit Muslim inmates to be placed on a Kosher diet; and the facility had no approved halal vendors from which it could buy conforming food. *Id.* at 1317.

Here, Plaintiff directs the Court to no authority suggesting that a contract monitor violates an inmate's First Amendment right when she approves CRD menus (after a Rabbi approves them) and conducts kitchen inspections. Defendant Berry is the state contract monitor who signed off on previous CRD menus, conducted kitchen inspections, and denied Plaintiff's grievance. There is no suggestion that these actions would plainly deny Kosher meals to inmates. First, the relevant policy and contracting documents provide that it is the duty of Aramark personnel—not Defendant Berry—to confirm that the CRD menus, meal components, and processes are actually Kosher, and Rabbi Friedman attested that they were. Doc. 133-3 at 1-5. Second, the relevant records provide

exhaustive certification that the CRD menu items are Kosher.[16, 17] Third, "the denial of a grievance," without more, does not give rise to liability under § 1983. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

Plaintiff asks the Court to find that, under these facts, every reasonable official would be on notice that Defendant Berry's limited involvement with the CRD would violate an inmate's First Amendment rights. In the absence of any authority involving similar circumstances, Plaintiff has not met his burden. Therefore, Defendant Berry is entitled to qualified immunity, and the Court dismisses Plaintiff's individual capacity claims against her under § 1983.

### D. Section 1983 Individual Capacity Claims Against Defendant Allen

Plaintiff has not presented a genuine dispute as to any material fact regarding his claims against Defendant Allen. It is undisputed that Defendant Allen has had no personal contact with Plaintiff or direct knowledge of his diet. Nevertheless, the Court previously declined to dismiss Plaintiff's supervisory claims based on the filings available—but only "to the extent that plaintiff claims [Defendant Allen] intentionally created, promulgated, implemented, or [was] responsible for the CRD menu . . . ." Doc. 90 at 10.

Section 1983 defendants may be subject to supervisory liability in their individual capacities. *Burke v. Regalado*, 935 F.3d 960, 997 (10th Cir. 2019). A claim of supervisory liability requires the plaintiff to show "(1) personal involvement[,] (2) causation, and (3) state of mind." *Id.* (alteration in original) (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d

---

[16]   In response to this documentation, Plaintiff argues that although the CRD items may be certified as Kosher now, they were not Kosher from 2014 through 2016. Even assuming Plaintiff's allegation is true, this fact does not alter the qualified immunity analysis for Defendant Berry.

[17]   Although Plaintiff claims that the bread is not Kosher, the box he relies upon is labeled by the vendor as Item #1018. One of Defendant Berry's many Kosher certifications, provided by the same vendor, states that "case item 1018" is "confirmed Kosher certification by Cincinnati Kosher." Doc. 133-1 at 40. With respect to the certificate's statement that the box should ordinarily bear Kosher markings, the letter further states that the "Kosher logo will be added to all future cases going forward with this certification." *Id.*

760, 767 (10th Cir. 2013)). A plaintiff can establish personal involvement by showing that "the [supervisor] promulgated, created, implemented[,] or possessed responsibility for the continued operation of a policy . . . ." *Id.* (alteration in original) (quoting *Brown*, 662 F.3d at 1164). Causation requires the plaintiff to show that the defendant set "in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Id.* (quoting *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014)). In the free exercise context, the required state of mind is "discriminatory purpose" or, at the least, "conscious or intentional interference with the right to free exercise." *Ralston v. Cannon*, 884 F.3d 1060, 1064 n.3 (10th Cir. 2018).

Here, Plaintiff's response to Defendant Allen's motion purports to contest only one material fact relevant to this issue. Defendant Allen states that she had no interaction with Plaintiff, and "never had anything to do with how meals were packaged, prepared, served, consumed or other operational issues, nor any role in determining who, how or what constituted any particular religious meal or related practice." *Id.* at 1-2. Plaintiff responds that the older CRD menus could not have been implemented without her signature, but he does not contest that Defendant Allen's limited role lacked specific responsibility and oversight for the CRD's alleged shortcomings.

Plaintiff has not demonstrated Defendant Allen's supervisory liability. First, although Defendant Allen concedes that she participated in the creation of the CRD menus from March 2002 through June 2018 (Doc. 128 at 2), Plaintiff has not shown that Defendant Allen was responsible for certifying the menus as Kosher. Plaintiff refers to internal policy guidance to allege that Defendant Allen had responsibility for the Kosher status of the CRD's meal components, but these general references to involvement in <u>nutrition</u> certification do not show influence over the menu's Kosher status.

Second, Plaintiff has not demonstrated how Defendant Allen should have known that signing off on the menus' nutritional content would result in violations of his right to a Kosher diet. Third, Plaintiff does not show that Defendant Allen consciously or intentionally interfered with his free exercise rights by approving the nutritional content of the meal, let alone acted with discriminatory purpose. Rather, Plaintiff's briefing shows that he has treated Defendant Allen as an interchangeable defendant. *See, e.g.*, Doc. 146 at 19 (replacing Rabbi Fellig's name with Defendant Allen's in section heading, making no allegations against her). This is insufficient to show a factual dispute for trial. Therefore, because Plaintiff has not demonstrated an issue of material fact, the remainder of Defendant Allen's motion for summary judgment is granted.

### D.      Remaining Defendants

The outcome of this order is that no claims remain against Defendant Allen and limited claims remain against Defendant Berry. But other defendants remain in the case. Plaintiff has active claims under § 1983 and RLUIPA against Defendants Aramark, Paul Church, and Julie Dockendorff. Judge Murguia dismissed the RLUIPA claims against Defendants Church and Dockendorff in their individual capacities, but other claims remain—claims that mirror those the Court addressed above.

Several of these claims could be impacted by the Court's jurisdictional and exhaustion rulings herein. But these defendants have not moved for summary judgment, and the Court declines to make their arguments for them. This leaves for disposition (1) claims against Defendants Aramark, Church (official capacity), and Dockendorff (official capacity) under § 1983 and RLUIPA based on the CRD policy and meal preparation at the three prison facilities; and (2) claims against Defendants Church (individual capacity) and Dockendorff (individual capacity) under § 1983 based on the CRD policy and on CRD meal preparation at the same three facilities.

E.      **Plaintiff's Motion for Summary Judgment**

Although the Court has granted summary judgment in full to Defendant Allen, claims remain against Defendant Berry. This does not, however, mean the Plaintiff has shown he is entitled to summary judgment on those remaining claims. To the contrary, Plaintiff has not met his burden of showing he is entitled to summary judgment on the remaining official capacity claims against Defendant Berry. Those issues have not been fully briefed because Defendant Berry believed the claims had already been dismissed. The Court will not grant summary judgment for Plaintiff when there was a justifiable misunderstanding on the status of claims. Plaintiff's motion is denied.

## IV.      CONCLUSION

Defendants Berry and Allen are granted summary judgment. The following claims remain for disposition: (1) official capacity claims for prospective relief against Defendant Berry under § 1983 and RLUIPA based on the CRD policy; (2) claims against Defendants Aramark, Church (official capacity), and Dockendorff (official capacity) under § 1983 and RLUIPA based on the CRD policy and meal preparation at LCF, HCF, and EDCF; and (3) claims against Defendants Church (individual capacity) and Dockendorff (individual capacity) under § 1983 based on the CRD policy and on CRD meal preparation at the same three facilities. Based on the previous misunderstanding created by Judge Murguia's order, though, the Court will allow Defendant Berry <u>thirty days</u> from the date of this order to file a motion for summary judgment on the remaining claims against her. Likewise, because the rulings in this order also have the potential to impact some of the claims against Defendants Aramark, Church, and Dockendorff, the Court also grants these defendants <u>thirty days</u> to file a motion for summary judgment on the mootness and exhaustion issues. The Court desires to complete briefing without extensions of time, given the

length of time this case has been pending. The Court plans to rule on the anticipated motion(s) expeditiously and then lift the stay for discovery to begin.

THE COURT THEREFORE ORDERS that Defendants' motions for summary judgment (Docs. 127 and 132) are GRANTED and Plaintiff's cross-motion for summary judgment (Doc. 149) is DENIED. Defendant Allen is terminated as a party in the case, but Defendant Berry remains an active defendant.

THE COURT FURTHER ORDERS that Defendant Berry has <u>thirty days</u> from the date of this order to file a motion for summary judgment on the remaining claims against her.

THE COURT FURTHER ORDERS that Defendants Aramark, Church, and Dockendorff have <u>thirty days</u> from the date of this order to file motions for summary judgment on the exhaustion and mootness issues.

THE COURT FURTHER ORDERS that, if no motions are filed, the Court will lift the stay on the case and refer it to the magistrate judge for scheduling.

IT IS SO ORDERED.

Dated: May 12, 2020          /s/ *Holly L. Teeter*_____
                             HOLLY L. TEETER
                             UNITED STATES DISTRICT JUDGE