# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DERON MCCOY, JR.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**ARAMARK CORRECTIONAL SERVICES, LLC, et al.,**<br><br>**Defendants.** | Case No. 5:16-CV-03027-HLT |

## ORDER

Plaintiff inmate DeRon McCoy, Jr. filed this lawsuit against Aramark Correctional Services ("Aramark") and multiple Aramark and Kansas Department of Corrections ("KDOC") personnel alleging First Amendment free exercise violations pursuant to 42 U.S.C. § 1983 and violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq*. Doc. 56. The crux of his complaint is that Defendants have failed to provide him with a Kosher diet in accordance with his Jewish faith.[1]

The Court recently granted in part and denied in part a motion for summary judgment filed by the KDOC Defendants. As a result of that ruling, the Court determined that the following claims remained for resolution: (1) official capacity claims for prospective relief against Defendant Patricia Berry under § 1983 and RLUIPA based on the Certified Religious Diet ("CRD") policy;[2] (2) claims for prospective relief against Defendants Aramark, Paul Church (official capacity), and

---

[1] The Court recognizes that Plaintiff is proceeding pro se and therefore "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007).

[2] For ease of reference, the Court uses the terminology "CRD policy" throughout this order. This is a bit of a misnomer. In using this descriptor, the Court uses it in its general sense and refers to the official CRD menu itself, as well as Aramark standards for CRD food preparation.

Julie Dockendorff (official capacity) under § 1983 and RLUIPA[3] based on the CRD policy and meal preparation at three prison facilities; and (3) claims for damages against Defendants Aramark, Church (individual capacity) and Dockendorff (individual capacity) under § 1983 based on the CRD policy and on CRD meal preparation at the same three facilities.

Defendants Aramark, Church, and Dockendorff moved for summary judgment on the remaining claims (Doc. 176) and the Court allowed Defendant Berry to belatedly join their motion (Docs. 182 & 183).

As discussed below, the Court finds that it lacks jurisdiction over <u>all</u> Plaintiff's claims for prospective relief. Plaintiff failed to exhaust his claims for meal preparation at HCF and EDCF. Plaintiff's remaining claims—for damages against Defendants Aramark, Church (individual capacity), and Dockendorff (individual capacity) under § 1983 based on meal preparation at LCF and the CRD policy—lack the factual support needed to survive a summary judgment challenge. Accordingly, the Court grants Defendants' motion for summary judgment.

**I.   BACKGROUND**[4]

KDOC contracts with Aramark for meal services at various sites, including Lansing Correctional Facility ("LCF"), El Dorado Correctional Facility ("EDCF"), and Hutchinson Correctional Facility ("HCF"). At all relevant times, Defendant Berry was the Contract Manager for KDOC, including for the Aramark contract. Defendant Church is a District Manager for Aramark and Defendant Dockendorff was a dietician for Aramark during the relevant times of this

---

[3] Only equitable relief is available against any party under RLUIPA—not damages. *See Hendricks v. Aramark Inc.*, 2015 WL 1809361, at *4 (S.D. Ohio 2015) (citing *Sossamon v. Texas*, 563 U.S. 277, 293 (2011) ("We conclude that States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver."); *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) ("[M]onetary damages are not available under RLUIPA."); and *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) ("[RLUIPA] does not create a cause of action against state employees in their personal capacity.")).

[4] The following facts are either uncontroverted or viewed in the light most favorable to Plaintiff.

action. Plaintiff has been in KDOC custody since 2012. He is presently incarcerated at EDCF. In 2014, while incarcerated at LCF, Plaintiff changed his religious preference to a sect of the Jewish faith and was placed on the facility's roster to receive a Certified Religious Diet ("CRD"). He is dissatisfied with the CRD at all three KDOC facilities and believes that the diet does not provide Kosher food in conformity with his religious beliefs. Plaintiff was not placed on the roster to receive a CRD at HCF because Plaintiff was on a medical diet when he was housed there. He is currently not on the CRD roster at EDCF[5] because Plaintiff has not requested to be on the religious diet since he was most recently transferred to EDCF.

### A.     The CRD

The agreement between KDOC and Aramark grants Aramark the exclusive right to perform all food service, including non-inmate labor, at KDOC facilities. Aramark's obligations include providing various special diets other than the common fare, including medical diets and the CRD. Aramark develops and implements menus for the foods served to inmates, but KDOC must agree to and approve the menus. Aramark must obtain review of the CRD by an appropriate religious advisor to ensure that the CRD meets the requirements of a certified religious diet.

Aramark has policies to ensure that the CRD is implemented correctly. Aramark's religious authority, Rabbi Fellig, reviews and approves these policies. Aramark's meal preparation procedures require that Kosher products contain a certifying symbol and be stored separately from common fare. Doc. 133-1 at 48-50. The procedures also provide for a Kosher preparation area, separate utensils and cookware, and for separate cleaning areas. *Id.*

---

[5] It appears that Plaintiff <u>did</u> request the religious diet at EDCF during a previous stay, which would have been effective for about one month before Plaintiff was transferred out of EDCF.

3

At LCF, Evan Hitchcock works for Aramark as the General Manager/Regional Safety Leader. His job duties include training, managing performance, and directing and overseeing operations related to food service. In an affidavit attached to a previous summary judgment motion (incorporated in Defendants' present motion by reference), Hitchcock described procedures followed at LCF for preparation of CRD meals. Doc. 133-2. The Court declines to exhaustively explain those procedures here but provides the following summary:

- Aramark procures food for the CRD menu from manufacturers that use Kosher manufacturing processes.

- Aramark maintains certificates for this food showing it is Kosher-certified.

- After staff portion entrée items used for the CRD menu out of bulk boxes, the entrée items are stored separately from non-CRD food.

- Sliced bread and milk do not have Kosher symbols on the individual packaging, but Aramark maintains certificates showing they are Kosher.

- LCF uses a locked, CRD-designated room for preparation, service, and cleaning of CRD menu items. It contains its own sink for sanitation. After meals, dirty CRD trays are collected in one tub. These trays are designated by color. Disposable utensils (sporks) are discarded.

- LCF uses a steam kettle and oven to prepare warm CRD food—not stovetops.

- LCF uses separate CRD-designated serving utensils and cookware, which are kept apart from non-CRD utensils and cookware. They are not used to prepare regular meal items.

- CRD food does not come into contact with non-CRD food.

- Inmate workers who prepare CRD food are trained and must sign a training document, along with the Aramark trainer.

Rabbi Ben Friedman, a rabbinical authority, provides consultation to KDOC about Jewish religious issues, including Kosher dietary requirements. His work with KDOC includes ongoing compliance review and monitoring of Aramark's administration of the CRD. This may include monitoring kitchen operations; reviewing policies, procedures, and food labels; and providing

4

advice to KDOC and Aramark on how to comply with Jewish dietary law. As explained in this Court's most recent Order (Doc. 175), Rabbi Friedman attests that he has reviewed "the procedures, menus, and food labels for all items on the CRD," and that "[i]t is completely permissible for inmates wishing to observe Jewish dietary laws to eat all of the items on the CRD menu, including inmates wishing to meet strict Kosher laws under Orthodox Judaism." Doc. 133-3 at 2. Rabbi Friedman explained that the procedures used by Defendants for preparation, storage, cleaning, and disposal of CRD food, utensils, and dishes were not a violation of Kosher dietary laws—even the specific processes that Plaintiff complains about, such as having some CRD menu items in the same room as non-CRD items, using the same sink for washing cooking utensils at EDCF, or placing CRD trays in the common tray slot after use.[6]

### B. Plaintiff's Grievance and Allegations

Plaintiff began the grievance process in 2014, while incarcerated at LCF. He stated that CRD meal preparation at LCF resulted in the food, utensils, and dishes being contaminated by non-Kosher contact, and requested the remedy of packaged Kosher meals. His request and appeal were denied, and he commenced this suit. Although his allegations regarding the Kosher status of the CRD have remained consistent, his concerns regarding each facility's meal preparation vary in both their nature and support.

Plaintiff relies on his own investigations and firsthand knowledge, as well as statements of other inmates. From personal experience, Plaintiff states that he has not observed Kosher markings on any food items other than condiments while in KDOC custody. He also discusses his observations of CRD meal preparation and delivery (as well as details others have allegedly shared with him). From fellow inmates, Plaintiff provides affidavits by cooks at HCF and EDCF, who

---

[6] For a more specific discussion of Rabbi Friedman's affidavit, see Doc. 175 at 4-5.

discuss their observations about preparation of CRD meals at those facilities. Plaintiff has not offered testimony of a rabbi or an expert on Jewish dietary practices to support his claims that the processes utilized by Aramark violate Kosher dietary laws. Nor is Plaintiff himself a rabbi, and he has offered no evidence that he or anyone providing an affidavit on his behalf has rabbinical training.

### C. The Lawsuit

Plaintiff filed suit while incarcerated at LCF. He was later transferred to EDCF, HCF, EDCF, LCF, and back to EDCF. He filed his third amended complaint while at HCF. As stated above, Plaintiff's third amended complaint asserts § 1983 and RLUIPA claims against Defendants. He alleges that Defendants created and enforced the policy and procedure by which the CRD meals are prepared and food is handled in the facilities where Plaintiff has been housed. Plaintiff seeks $200 in damages, $77,000 in punitive damages, costs of this suit, a declaratory judgment that Defendants are violating his rights, and a permanent injunction directing Defendants to provide Kosher meals conforming with Jewish dietary laws. Plaintiff wants his meals served still sealed (like "TV dinners"), pre-packaged, and visibly marked Kosher. Alternatively, the Kosher meals should be prepared in a separate room, and any utensils or tools used to prepare them must be kept and cleaned separately.

The Court dismissed Plaintiff's RLUIPA claims against Defendants in their individual capacities because RLUIPA does not create a cause of action for individual-capacity claims. Doc. 90 at 13. The Court found that, to the extent Plaintiff seeks money damages or a declaration from the Court that Defendant Berry violated his rights in the past (in her official capacity), relief is barred by the Eleventh Amendment. *Id.* at 8. The Court dismissed Plaintiff's claims for failure to

supervise subordinates. *Id.* His claims remain that Defendants intentionally created, promulgated, implemented, or were otherwise responsible for the CRD menu and its food preparation. *Id.* at 10.

## II.     STANDARD

Summary judgment is appropriate where the moving party demonstrates that "there is no genuine dispute as to any material fact" and it is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In applying this standard, courts must view the facts and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.    ANALYSIS

As discussed above, Defendants seek summary judgment on each of the remaining claims asserted against them. Doc. 176. The Court determines that:

- The Court lacks jurisdiction for <u>all</u> claims seeking prospective relief;

- Plaintiff failed to exhaust his claims for damages at HCF and EDCF; and

- Plaintiff fails to demonstrate a genuine issue of material fact with respect to his § 1983 claim for damages against Defendants Aramark, Church, and Dockendorff, based on meal preparation at LCF and the CRD policy.

### A.      Jurisdiction (Standing and Mootness)

The first issue the Court addresses is its jurisdiction over all remaining claims for prospective relief. In this Court's Order dated May 12, 2020, the Court noted that it initially appeared that Plaintiff was no longer requesting or receiving meals under the CRD. But, contrary

7

to this fact propounded by Defendants, Plaintiff filed a document suggesting that he had, indeed, requested meals under the CRD at his current correctional facility (at the time, EDCF).

Now, Defendants have adduced additional evidence showing that Plaintiff was transferred from EDCF after last requesting meals under the CRD. Although he now resides at EDCF again, this time, Plaintiff has not requested a religious diet. KDOC policy requires that a prisoner renew a request to be placed on a religious diet at each new facility. IMPP 10-110D, § V.2. The Court therefore turns again to its jurisdiction to offer prospective relief.

Article III of the Constitution specifically limits the jurisdiction of federal courts to cases and controversies. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The case or controversy limitation requires that a plaintiff have standing." *United States v. Colo. Sup. Ct.*, 87 F.3d 1161, 1164 (10th Cir. 1996); *see also Brady Campaign to Prevent Gun Violence v. Brownback*, 110 F. Supp. 3d 1086, 1091 (D. Kan. 2015) ("One of several doctrines reflecting Article III's case-or-controversy limitation on the judicial power is the doctrine of standing."). But standing is determined "as of the commencement of suit . . . ." *Lujan*, 504 U.S. at 570 n.5; *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154-55 (10th Cir. 2005). This is not to say that the case-or-controversy requirement ends after commencement; a plaintiff must establish that he has suffered an injury-in-fact throughout the litigation. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (citations omitted). If subsequent events impact whether an actual controversy remains, courts evaluate their continuing jurisdiction under mootness principles. *Prior v. Steed*, 456 F.3d 1209, 1212 (10th Cir. 2006). Either way, the question is one of a court's jurisdiction.

In this case, Plaintiff filed his original complaint on January 26, 2016. At that time, Plaintiff was housed at LCF, had applied to receive the CRD at LCF, and brought claims about the CRD at LCF. Doc. 1. At commencement, Plaintiff had standing to bring his claims.

The current operative complaint, however, is Plaintiff's third amended complaint. Doc. 56. Plaintiff filed this complaint on June 14, 2017. Before filing, Plaintiff had been moved to EDCF and to HCF (but not yet back to his current location, EDCF). He was at HCF when he filed the third amended complaint and alleged constitutional and RLUIPA violations at all three facilities. The question, then, becomes one of mootness: Did Plaintiff's transfers and his actions or inaction after those transfers remove the actual controversy before the Court?[7] For some of Plaintiff's claims, the answer is yes.

Against the backdrop of these well-established legal principles, the Court has reviewed the record presented by the parties. These facts are uncontroverted:

- Plaintiff was housed at LCF when he filed this lawsuit and remained there until his transfer to EDCF on June 16, 2016. While at LCF, Plaintiff applied for and was approved to receive CRD meals.

- Plaintiff was housed at EDCF from June 16, 2016 until his transfer to HCF on March 22, 2017. Plaintiff has not pointed to any evidence in the record indicating that he requested to receive the CRD during this time at EDCF or that Plaintiff ate CRD meals during this time.

- Plaintiff was housed at HCF from March 22, 2017 to January 29, 2018. While at HCF, Plaintiff applied for a religious diet. His request was initially granted, but then denied. Plaintiff was not eligible to receive the CRD while at HCF because he was on a medical diet. Plaintiff does not allege that he consumed any CRD meals while at HCF.

- Plaintiff was housed at EDCF from January 29, 2018 to May 16, 2019. During that time, on April 11, 2019, plaintiff was apparently approved for the CRD at EDCF.

---

[7] As the Court noted in its Order entered May 12, 2020, it is at least arguable that the Court should consider Plaintiff's standing to bring new claims in the third amended complaint instead of the original complaint—particularly when one of the questions is whether Plaintiff has suffered injury-in-fact from a new claim, not whether he continues to suffer injury-in-fact from an old claim. *Compare Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 n.3 (Fed. Cir. 2005) ("The initial standing of the original plaintiff is assessed at the time of the original complaint, even if the complaint is later amended."), *with In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) ("[I]n cases where a plaintiff has filed an amended complaint, federal courts must resolve questions of subject matter jurisdiction by examining the face of the amended complaint."). But again, while this dichotomy raises an interesting question, ultimately, the central question is whether this Court has jurisdiction over Plaintiff's claims. And, once again, the Court believes it can answer that question without expounding at length on whether standing or mootness is the appropriate doctrine to apply here.

9

- From May 16, 2019 to June 18, 2019, Plaintiff was housed at LCF. There is no evidence that he applied for a religious diet while there.

- Plaintiff is currently housed at EDCF and has been since June 18, 2019. Plaintiff has not applied for the religious diet since being returned to EDCF.[8]

- Requests for religious diets are handled on a facility-by-facility basis. IMPP 10-110D, Section V.B.2. provides, "Even if the particular request for accommodation has been previously approved within KDOC, the request for accommodation shall be forwarded to the Religious Programs Coordinator for review, who shall, at a minimum, confirm that the particular request has been previously accommodated at another facility within KDOC, and in what manner and under what circumstances." Doc. 56 at 50.

Based on these facts, Plaintiff lacks standing to sue for prospective relief about the CRD (either its composition or its execution) because he is no longer under the CRD. Because Plaintiff is no longer subjected to the policies of the CRD, there is no case or controversy for this Court to decide, other than Plaintiff's request for damages for past wrongs. Plaintiff is no longer suffering an injury-in-fact,[9] and the Court lacks jurisdiction over all claims for prospective relief.

### B.    Exhaustion of Administrative Remedies

The Prison Reform Litigation Reform Act ("PLRA") prohibits prisoners from bringing a suit regarding prison conditions until administrative remedies are exhausted.[10] 42 U.S.C.

---

[8] Plaintiff attempts to controvert this fact by stating that he requested Kosher meals and was placed on the CRD. Plaintiff has, at times, requested Kosher meals and been placed on the CRD. But the evidence Plaintiff cites does not indicate that, during this stay at EDCF, Plaintiff requested to be placed on a religious diet. Instead, he has been receiving non-Kosher, regular menu items at EDCF.

[9] Plaintiff never was under the CRD at HCF, so he has not suffered injury-in-fact there at all.

[10] The exhaustion requirement applies to both claims against prison-parties, as well as claims against prison-contractor parties. *Bradley v. Crowther*, 2017 WL 4325804, at *5, n.36 (D. Utah 2017) (citing *Fontenot v. Glob. Expertise In Outsourcing*, 232 F. App'x 393, 394 (5th Cir. 2007); *Martinez v. Guadalupe Cty.*, 200 F. Supp. 3d 1216, 1261 (D.N.M. 2016); *Chandler v. C.C.S. Med. Servs.*, 2016 WL 8453025, at *2 (D. Vt. 2016), report and recommendation adopted, 2016 WL 4491763 (D. Vt. 2016) ("First, it is well established that the PLRA applies to prison contractors like CCS.") (collecting cases)); *see, e.g.*, *Smart v. Dep't of Corr. for Queen Anne's Cty.*, 2019 WL 3997128, at *5 (D. Md. 2019) (dismissing Aramark for failure to exhaust). The requirement is that the suit be related to prison conditions—not that the defendants be the correctional facility or its employees.

10

§ 1997e(a). In a functioning grievance process, there is no exception for alleged futility. *See Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).[11]

The documentation for Plaintiff's grievance process in this case can be found in the *Martinez* report. *See* Doc. 41-7. When read liberally, as required, Plaintiff's administrative claim concerns the meal service at LCF and includes the Kosher status of CRD meal items. *See id.* at 3-4. Plaintiff has not pursued the grievance process at HCF or EDCF, explaining "To require the plaintiff to file three different grievances then exhaust administrative remedies and then file three separate civil actions for the same exact violations of his right to religious practice would be highly prejudicial, would cause an undue burden upon him financially as each lawsuit cost $350.00 . . . ." Doc. 185 at 17. To the extent Plaintiff bases his claims on the method of meal service at HCF and EDCF, rather than Aramark policies relevant to the CRD, he must first give Aramark the opportunity to address his new grievances.[12]

Plaintiff's claims regarding the meal service and kitchen conditions at HCF and EDCF are unexhausted, and the Court dismisses them without prejudice.[13] *See Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) (noting that dismissal of claims based on failure to exhaust should normally be without prejudice).

### C. Remaining Claims: § 1983 Claims for Damages Against Defendants Aramark, Dockendorff (Individual Capacity), and Church (Individual Capacity) Based on Meal Preparation at LCF and the CRD Policy

---

[11] Although the Supreme Court has identified rare exceptions to statutory exhaustion, none apply here. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016).

[12] Plaintiff states in his response brief that he "would like to clarify to the court that he is only bringing claims against the policy and procedure for the (CRD) and the policy makers of the (CRD)." Doc. 185 at 16. Yet, Plaintiff still details his observations at each facility individually. It is somewhat unclear to the Court whether Plaintiff still intends to challenge meal preparation at each facility, but to the extent that he still mounts this challenge, he may not do so without exhausting his claims.

[13] Of course, the Court has already dismissed some of these claims based on jurisdiction, but failure to exhaust serves as an alternative basis for dismissal.

To show that Defendants violated Plaintiff's constitutional right to free exercise, Plaintiff must show a substantial burden on his exercise of a sincerely-held religious belief. *Id.* at 1069-70. The Tenth Circuit has repeatedly "recognized that an inmate's right to free exercise of religion includes the right to a diet that conforms with their religious beliefs." *Id.* at 1070. And Plaintiff must show that Defendants' actions constituted conscious[14] or intentional interference with his free exercise rights; isolated acts of negligence are insufficient. *Id.*

Plaintiff has submitted countless conclusory allegations about what he believes is required for a Kosher diet and how Defendants have failed to provide it to him. In many instances, Plaintiff neglected to provide any citation to the record.[15] In other instances, Plaintiff provided a citation that is lengthy and broad—not a reference to a particular part of the record materials.[16] Rule 56(c) requires citation to "particular parts of materials in the record." And Plaintiff also cites to inadmissible hearsay for much of his evidence about how CRD meals were prepared at LCF—relying on out-of-court conversations with other inmates.[17] None of this is proper for the Court to consider on a motion for summary judgment.

In contrast, Defendants submitted their policies and procedures and accompanying evidence from rabbinical authority explaining why the policies and procedures comply with Jewish dietary law. The evidence shows that if there were times at LCF that the CRD meal was not Kosher, it was the result of incidental negligence and not conscious or intentional interference with

---

[14] Note that use of the "conscious interference" has been called into question by the Tenth Circuit. *Ralston v. Cannon*, 884 F.3d 1060, 1063 n.3 (10th Cir. 2018). The Court need not address whether "conscious interference" is enough to show a constitutional deprivation because Plaintiff fails to produce any admissible evidence that would suggest any interference by Defendants was conscious <u>or</u> intentional. <u>At most</u>, Plaintiff has provided evidence of isolated negligent acts.

[15] Examples include Doc. 185 at 3 ¶ ¶ 7 & 20; 4 ¶ 23; 5 ¶ 66.

[16] Examples include Doc. 185 at 3 ¶¶ 4, 12, 15, & 18; 4 ¶¶ 31-32 & 37-41. These paragraphs, as well as others, cite the entirety of multiple exhibits.

[17] Examples include Doc. 185 at 9 ¶¶ 19-20; 10 ¶ 47; 11 ¶ 60.

Plaintiff's right to the free exercise of his religion. And by seeking rabbinical review and approval of CRD menus and procedures in advance, Defendants have further demonstrated that any interference was neither conscious nor intentional. Moreover, importantly for claims against Aramark and its employees, it was KDOC and Rabbi Friedman who were responsible for approving the CRD menus and denying any request by Plaintiff for a "TV dinner" as his Kosher meal. For liability under § 1983, it must be a defendant's <u>own</u> action, policy, or custom that violates a plaintiff's rights. Aramark and its employees provided Plaintiff CRD meals as specified in its contract with KDOC. They could not have consciously or intentionally interfered with Plaintiff's right to free exercise when they were acting pursuant to contract and lacked the authority to alter Plaintiff's meal plan.

Courts that have permitted prison meal-related free exercise claims to proceed have done so when the prison or contractor has (1) charged a fee to inmates for Kosher meals;[18] (2) provided one Kosher meal per day, but only allowed potentially non-Kosher "vegetarian or pork-free meals" for the other two meals;[19] or (3) failed to contract with approved halal vendors from which it would purchase conforming food for Muslims inmates.[20]

These situations are a far cry from the admissible evidence the Court has before it about Defendants' actions. The uncontroverted evidence shows that Defendants offer Kosher meals to inmates without charge. It further shows that Defendants have procedures in place to ensure that CRD meals are prepared in accord with Jewish dietary practices. Plaintiff's personal "investigation" into Defendants' preparation practices does not reveal any conscious or intentional interference with Plaintiff's right to receive Kosher meals if he properly requests them following

---

[18] *See, e.g.*, *Beerheide v. Suthers*, 286 F.3d 1179, 1192 (10th Cir. 2002).

[19] *See, e.g.*, *Ashelman v. Wawrzaszek*, 111 F.3d 674, 676, 678 (9th Cir. 1997).

[20] *See, e.g.*, *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1317-18 (10th Cir. 2010).

KDOC policy. At most, the admissible evidence may show isolated acts of negligence by workers at LCF. But even if the Court accepts Plaintiff's personal observations of alleged violations as true (for example, on one occasion, he saw cockroaches on a "steam well" that was used to serve the CRD at LCF), the violations do not show that Defendants—who were not present at the time—exhibited a conscious or intentional interference with Plaintiff's free exercise of religion. No reasonable jury could conclude otherwise, so summary judgment is appropriate.

## IV.   CONCLUSION

As a result of the rulings in this Order, Plaintiff has no viable claims remaining against any Defendants in this case. The Court lacks jurisdiction over some of Plaintiff's claims, some must be dismissed without prejudice for failure to exhaust, and others lack evidentiary support. Plaintiff is not entitled to "TV dinners" from KDOC or Aramark and is not entitled to compensation for Defendants' use of the CRD menu to provide Kosher meals for inmates following Jewish dietary laws.

THE COURT THEREFORE ORDERS that Defendants' motion for summary judgment (Doc. 176) is GRANTED. The Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiff. The case is closed.

IT IS SO ORDERED.

Dated: October 2, 2020   /s/  *Holly L. Teeter*
                          HOLLY L. TEETER
                          UNITED STATES DISTRICT JUDGE